Mr. Drew Pritt 3204 Fair Park Blvd., #1S Little Rock, AR 72204
Dear Mr. Pritt:
You have requested certification, pursuant to A.C.A. § 7-9-107, of the popular name and ballot title for a proposed amendment to the Arkansas Constitution. You have previously submitted ballot titles for similar measures, which I and my predecessor have rejected for various reasons. See Ark. Ops. Att'y Gen. Nos. 2007-172 and 2005-303. Your proposed popular name and ballot title are as follows:
Popular Name
An Amendment to the Arkansas Constitution Creating
The Arkansas Education Lottery Commission
Ballot Title
AN AMENDMENT TO THE ARKANSAS CONSTITUTION CREATING THE ARKANSAS EDUCATION LOTTERY COMMISSION AND INVESTING IT WITH POWER TO LICENSE, AND REGULATE CHARITABLE BINGO AND RAFFLES, CONDUCT AND REGULATE GAMBLING GAMES AT CASINOS OWNED BY THE COMMISSION AND OPERATED BY THE COMMISSION OR ITS CONTRACTORS, LICENSE THOROUGHBRED AND GREYHOUND RACING TRACKS TO CONDUCT GAMBLING GAMES, AND REQUIRING THE COMMISSION TO OPERATE AND REGULATE ONE OR MORE STATEWIDE LOTTERY GAMES WITH THE PROCEEDS GOING TOWARDS PUBLIC SCHOOL EDUCATION IN THE STATE OF ARKANSAS
The Attorney General is required, pursuant to A.C.A. § 7-9-107, to certify the popular name and ballot title of all proposed initiative and referendum acts or amendments before the petitions are circulated for signature. The law provides that the Attorney General may substitute and certify a more suitable and correct popular name and ballot title, if he can do so, or if the proposed popular name and ballot title are sufficiently misleading, may reject the entire petition. Neither certification nor rejection of a popular name and ballot title reflects our view of the merits of the proposal because this Office has been given no authority to consider the merits of any measure.
In this regard, A.C.A. § 7-9-107 neither requires nor authorizes this office to make legal determinations concerning the merits of the act or amendment, or concerning the likelihood that it will accomplish its stated objective. Consequently, this review has been limited to a determination, pursuant to the guidelines that have been set forth by the Arkansas Supreme Court, discussed below, of whether the proposed popular name and ballot title accurately and impartially summarize the provisions of your proposed amendment or act.
The purpose of my review and certification is to ensure that the popular name and ballot title honestly, intelligibly, and fairly set forth the purpose of the proposed amendment or act. See Arkansas Women's Political Caucus v. Riviere, 282 Ark. 463, 466, 677 S.W.2d 846 (1984).
The popular name is primarily a useful legislative device. Pafford v. Hall, 217 Ark. 734, 233 S.W.2d 72 (1950). It need not contain detailed information or include exceptions that might be required of a ballot title, but it must not be misleading or give partisan coloring to the merit of the proposal. Chaney v. Bryant, 259 Ark. 294, 532 S.W.2d 741
(1976); Moore v. Hall, 229 Ark. 411, 316 S.W.2d 207 (1958). The popular name is to be considered together with the ballot title in determining the ballot title's sufficiency. Id.
The ballot title must include an impartial summary of the proposed amendment or act that will give the voter a fair understanding of the issues presented. Hoban v. Hall, 229 Ark. 416, 417, 316 S.W.2d 185
(1958); Becker v. Riviere, 270 Ark. 219, 223, 226, 604 S.W.2d 555
(1980). According to the court, if information omitted from the ballot title is an "essential fact which would give the voter serious ground for reflection, it must be disclosed." Bailey v. McCuen, 318 Ark. 277,285, 884 S.W.2d 938 (1994), citing Finn v. McCuen, 303 Ark. 418,798 S.W.2d 34 (1990); Gaines v. McCuen, 296 Ark. 513, 758 S.W.2d 403 (1988); Hoban v. Hall, supra; and Walton v. McDonald, 192 Ark. 1155,97 S.W.2d 81 (1936). At the same time, however, a ballot title must be brief and concise (see A.C.A. § 7-9-107(b)); otherwise voters could run afoul of A.C.A. § 7-5-522's five minute limit in voting booths when other voters are waiting in line. Bailey v. McCuen, supra. The ballot title is not required to be perfect, nor is it reasonable to expect the title to cover or anticipate every possible legal argument the proposed measure might evoke. Plugge v. McCuen, 310 Ark. 654, 841 S.W.2d 139 (1992). The title, however, must be free from any misleading tendency, whether by amplification, omission, or fallacy; it must not be tinged with partisan coloring. Id. A ballot title must convey an intelligible idea of the scope and significance of a proposed change in the law. Christian Civic Action Committee v. McCuen, 318 Ark. 241, 884 S.W.2d 605 (1994). It has been stated that the ballot title must be: 1) intelligible, 2) honest, and 3) impartial. Becker v. McCuen, 303 Ark. 482, 798 S.W.2d 71 (1990), citing Leigh v. Hall, 232 Ark. 558, 339 S.W.2d 104 (1960).
Having analyzed your proposed amendment, as well as your proposed popular name and ballot title under the above precepts, it is my conclusion that I must reject your proposed popular name and ballot title due to ambiguities in the text of your proposed measure. A number of additions or changes to your ballot title are, in my view, necessary in order to more fully and correctly summarize your proposal. I cannot, however, at this time, fairly or completely summarize the effect of your proposed measure to the electorate in a popular name or ballot title without the resolution of the ambiguities. I am therefore unable to substitute and certify a more suitable and correct popular name and ballot title pursuant to A.C.A. § 7-9-107(b).
I refer to the following ambiguities:
1. As an initial matter, I must note that I rejected your last submission for failure to enclose a proposed popular name for your measure and for failing to enclose the text of the constitutional amendment that you seek to have enacted. See Op. Att'y Gen. 2007-172. You have now enclosed a proposed popular name, a revised and abbreviated proposed ballot title, and you have enclosed as the text of your proposed constitutional amendment what was previously submitted as your ballot title in your last submission. That is, you have now delineated your former ballot title as your text, and drafted a shorter ballot title for the new "text." It appears that you propose to place in the Arkansas Constitution a constitutional amendment drafted in the manner of a ballot title and largely borrowed from a ballot title that I recently certified for another measure. See Op. Att'y Gen. 2007-160.
The text of a proposed constitutional amendment, if adopted, becomes a part of the Arkansas Constitution. Ideally it consists of clear, complete sentences that actively dictate the legal effects desired by the sponsors. A ballot title, on the other hand, is an impartial, concise summary of the proposed amendment. As a consequence, it usually consists of a series of short descriptive phrases or clauses, which refer to, summarize and delineate the various important provisions of the amendment. The format and wording of these summary phrases or clauses, however, do not ordinarily direct action or actively bring about changes in the law. As a consequence, this summary format, while entirely appropriate for a ballot title, causes interpretive difficulty when used as a template for the language of a constitutional amendment. Some examples of this difficulty will be illustrated below. Even if the unorthodox format of your proposed text were no obstacle, a number of other additional ambiguities remain in your proposed text, some of which I have enumerated below.
One portion of your proposed text, after referring to the creation of an "Arkansas Education Lottery Commission" and to the initial appointment and subsequent election of commissioners, states as follows: "WORKING WITH THE GOVERNOR IN SETTING THE QUALIFICATIONS OF COMMISSIONERS. . . ." I cannot determine from this clause who will be "working with the Governor" to set qualifications of commissioners. As a consequence, I cannot certify a ballot title that accurately summarizes this point for the electorate.
A subsequent portion of your proposed text provides that: "IN THE EVENT OF THE NEED FOR FILLING OF TEMPORARY VACANCIES BY THE REMAINING COMMISSION MEMBERS THE GOVERNOR IS AUTHORIZED TO MAKE SUCH APPOINTMENTS. . . ." Obviously, this sentence contains an internal inconsistency, which prohibits my fair summarization of its content in a ballot title for your measure. On the one hand, this sentence refers to the filling of temporary vacancies on the Commission by the "remaining Commissioners." On the other hand, the sentence purports to give the same authority to the Governor. The Arkansas Supreme Court has stated that such "[i]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." See Roberts v. Priest, 341 Ark. 813, 20 S.W.3d 376
(2000).
Another portion of your text provides: "AUTHORIZING THE COMMISSION TO LICENSE AND REGULATE CHARITABLE BINGO AND RAFFLES BY CERTAIN NONPROFIT ENTITIES WITH NET RECEIPTS DEPOSITED WITH THE ARKANSAS STATE TREASURY AND USED FOR SCHOLARSHIPS AT ANY FOUR YEAR ARKANSAS INSTITUTION OF HIGHER LEARNING, SALARY BONUSES FOR ARKANSAS PUBLIC SCHOOL TEACHERS WHO TEACH IN ARKANSAS PUBLIC SCHOOLS FOR UP TO THIRTY YEARS, AND FOR PURPOSES REQUIRING IT TO OPERATE AND REGULATE ONE OR MORE STATEWIDE LOTTERY GAMES AS DEFINED, THROUGH CONTRACTUALLY-AUTHORIZED LOTTERY GAME RETAILERS. . . ."
In addition to the confusing nature of the latter portion of this passage, several ambiguities arise from this language. First, your text references "certain nonprofit entities" as being authorized to conduct charitable bingo and raffles, but does not define which nonprofit entities are authorized to engage in this activity. This ambiguity may give the voters "serious ground for reflection." Second, your text authorizes these nonprofit entities to conduct bingo and raffles, but requires all "net receipts" to be forwarded to the State Treasury. An ambiguity arises as to the definition of "net receipts." It is unclear in this regard to what extent the nonprofit entities will be authorized to keep any of the proceeds for their various nonprofit causes. Third, the text of your measure provides no information as to what entity or persons will be authorized to award and distribute the scholarships or teacher bonuses or what the criteria for such awards will be. Although your measure indicates that the bonuses are for public school teachers who "teach in Arkansas public schools for up to thirty years" (emphasis added), this language is itself ambiguous. A question arises as to whether teachers teaching for more than thirty years would be eligible under this language. Fourth, your new proposed ballot title summarizes the text of your measure as "REQUIRING THE COMMISSION TO OPERATE AND REGULATE ONE OR MORE STATEWIDE LOTTERY GAMES WITH THE PROCEEDS GOING TOWARDS PUBLIC SCHOOL EDUCATION IN THE STATE OF ARKANSAS. . . ." The text of your proposed amendment, however, states with regard to lottery proceeds that: "REQUIRING RETENTION OF NET LOTTERY PROCEEDS BY THE COMMISSION TO SUPPORT ITS FUNCTIONS. . . ." Obviously, there is a disconnect between the language of your proposed ballot title and the text of your measure. It may be your intention, as expressed in your proposed ballot title, to use lottery revenues for the educational purposes you describe. The text of your measure, however, instead directs the "net receipts" of charitable bingo and raffles to these purposes and retains lottery revenues for use of the Commission. I cannot substitute and certify a ballot title for your measure in the face of these blatant inconsistencies.
5. A number of other ambiguities exist in the text of your measure. For example, your text mentions the amendment of both Arkansas Constitution, article 19, § 14 and Amendment 84, but does not set out the exact manner in which these existing constitutional provisions will be amended. This will be of substantial concern to the voting public and must be clearly expressed in your text before a ballot title summarizing these points can be certified. The foregoing list of ambiguities and inconsistencies is not intended to be exhaustive.
My office, in the certification of ballot titles and popular names, does not concern itself with the merits, philosophy, or ideology of proposed measures. I have no constitutional role in the shaping or drafting of such measures. My statutory mandate is embodied only in A.C.A. § 7-9-107 and my duty is to the electorate. I am not your counsel in this matter and cannot advise you as to the substance of your proposal.
At the same time, however, the Arkansas Supreme Court, through its decisions, has placed a practical duty on the Attorney General, in exercising his statutory duty, to include language in a ballot title about the effects of a proposed measure on current law. See, e.g., Finn v. McCuen, 303 Ark. 418, 793 S.W.2d 34 (1990). Furthermore, the Court has recently confirmed that a proposed amendment cannot be approved if "[t]he text of the proposed amendment itself contribute[s] to the confusion and disconnect between the language in the popular name and the ballot title and the language in the proposed measure." Roberts v. Priest, 341 Ark. 813, 20 S.W.3d 376 (2000). The Court concluded: "[I]nternal inconsistencies would inevitably lead to confusion in drafting a popular name and ballot title and to confusion in the ballot title itself." Id. Where the effects of a proposed measure on current law are unclear or ambiguous, it is impossible for me to perform my statutory duty to the satisfaction of the Arkansas Supreme Court without clarification of the ambiguities.
My statutory duty, under these circumstances, is to reject your proposed ballot title, stating my reasons therefor, and to instruct you to "redesign" the proposed measure and ballot title. See A.C.A. §7-9-107(c). As my predecessor stated in another similar rejection:
I must therefore return your submission and instruct you to finalize the language of your proposed amendment, perhaps with the guidance of private counsel or experts of your choosing to ensure that there are no ambiguities or problems of implementation. Amending the Arkansas Constitution is a matter of the utmost seriousness, and the Arkansas Supreme Court holds popular names and ballot titles of proposed amendments to a standard that is commensurate with this seriousness. The standard cannot be met, however, if the text of the measure is unclear or uncertainties remain. That is why I suggest that you seek assistance in evaluating your text, bearing in mind that my ability to certify a popular name and ballot title depends upon the clarity of the language of the amendment.
Op. Att'y Gen. 2003-127 at 2 (emphasis added).
Another of my predecessors stated, in rejecting a proposed ballot title that:
Amending the constitution of the state is a very serious matter. The Arkansas Supreme Court holds popular names and ballot titles of proposed constitutional amendments to a standard that is commensurate with this seriousness. Accordingly, I must be diligent in my duty to assure that the popular names and ballot titles that I certify meet the court's high standard. If you are intent upon passing a measure that will amend the constitution, I strongly urge you to obtain legal counsel who will be able to assist you in meeting this standard. Such counsel will help you to avoid wasting time and effort in preparing proposals that cannot be certified.
Op. Att'y Gen. 2000-240.
You may, after clarification of your measure, resubmit your proposed amendment, along with a proposed popular name and ballot title, at your convenience. I anticipate, as noted above, that some changes or additions to your submitted ballot title may be necessary. I will be pleased to perform my statutory duties in this regard in a timely manner after resubmission.
Sincerely,
DUSTIN McDANIEL Attorney General